IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GREGORY VAMVAKERIDES,

    Plaintiff,

v.                                                                            Civ. No. 14-00897 SCY

CAROLYN COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff Gregory Vamvakerides Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision denying Plaintiff disability insurance benefits. (ECF No. 14). For the reasons discussed below, the Court will grant Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.  BACKGROUND**

Plaintiff Gregory Vamvakerides is a fifty-five year old veteran who alleges a history of psychological ailments, including anxiety, depression, auditory hallucinations, paranoia, and diagnoses of schizoaffective disorder, bipolar II disorder, and agoraphobia. Plaintiff filed his Title II application for disability insurance benefits on March 3, 2012. Administrative Record (AR) 12. He alleged his onset date of disability was March 3, 2012. AR 12. His claim was initially denied on August 3, 2012, and his request for reconsideration was denied June 3, 2013. AR 12. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on June 21, 2013. AR 12. A video hearing was held on March 28, 2014. AR 12. On May 20, 2014, the ALJ

issued his decision denying Plaintiff's request for benefits.  AR 12-25. The Appeals Council subsequently denied Plaintiff's appeal of the ALJ's decision. AR 1-3.

**Plaintiff's Relevant Medical History**

Plaintiff first presented to licensed independent social worker Mary K. Woodard on March 13, 2012.  AR 493.  Ms. Woodard saw Plaintiff seven times over the course of approximately the following five weeks.  AR 494-95.  Ms. Woodward assessed Plaintiff to be suffering from Schizoaffective Disorder with symptoms of major depression, mania, paranoia, and auditory hallucinations.  AR 332. Ms. Woodard stated that she believed Plaintiff is unable to "maintain gainful employment or independent living" and that "he will require lifelong medical benefits, financial assistance possibly with a designated payee, likely including supervised living arrangements possibly with a case manager."  AR 332.  Ms. Woodard assessed Plaintiff with a GAF score of 40. AR 332.

Ms. Woodard also completed a Mental Residual Functional Capacity Assessment (MRFCA). AR 501. She listed Plaintiff as moderately limited in his ability to understand and remember very short and simple instructions, carry out detailed instructions, and maintain attention and concentration for extended periods.  AR 501.  She further listed him as moderately limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision.  AR 501.  She additionally listed him as moderately limited in his ability to make simple work-related decisions and complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 502. As to social interactions, Ms. Woodward rated Plaintiff as moderately limited in his ability to interact appropriately with the

general public, ask simple question or request assistance, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 502.  She rated his limitations severe in his ability to accept instructions and respond appropriately to criticism from supervisors and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 502.  Finally, Ms. Woodward listed Plaintiff as moderately limited in his ability to respond appropriately to changes in the work setting, be aware of normal hazards and take precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. AR 503.

On April 12, 2012, Plaintiff presented to Mental Health Resources.  AR 387.  Beth Smith, a counselor with Mental Health Resources, conducted a Comprehensive Assessment for Adults. During the assessment, Plaintiff reported feeling depressed, anxious, and hopeless.  AR 387. Plaintiff also reported paranoia, restlessness, auditory hallucinations, and lack of motivation.  AR 387.  Based on the assessment, Ms. Smith recommended that Plaintiff receive further evaluation by psychiatric staff due to ongoing symptoms of bipolar disorder and depressive symptoms.  AR 399.

On May 9, 2012, Plaintiff reported for a psychiatric intake at Mental Health Resources where he was examined by Nurse Practitioner Kim Devou.  AR 336. NP Devou's notes indicate that Plaintiff self-reported a history of depression, paranoia, anxiety, and auditory hallucinations. AR 336.  NP Devou further noted Plaintiff's reports of "odd dreams and nightmares," panic attacks, racing thoughts, and Plaintiff's inability to leave the house due to anxiety.  AR 336-37. NP Devou stated in her personal assessment of Plaintiff that he appeared "not disheveled, but not clean shaven," his "mood is neutral" and "affect is appropriate to mood."  AR 337. She noted that his "thought process is logical and organized, with free flow of thought and adequate

information exchange" and that "thought content is appropriate to topic." AR 337.  NP Devou further noted that Plaintiff was "alert oriented to person[,] place[,] time[,] and situation" and that he was "not a d[an]ger to himself in the immediate foreseeable future." AR 337.  She assessed Plaintiff with bipolar II disorder and "possibly avoidant personality disorder" and assigned a GAF score of 42.  AR 337-38. NP Devou adjusted Plaintiff's medication and recommended that he continue psychotherapy.  AR 338.

NP Devou's notes from Plaintiff's follow up visits report similar findings. On June 1, 2012, Plaintiff reported progress in regard to his sleeping habits. AR 339.  NP Devou noted that while Plaintiff still complained of depressive symptoms, his mood seemed improved. AR 339. NP Devou reported Plaintiff's condition as "stable." AR 339.  NP Devou's notes repeated these findings during follow up visits in August, September, and October of 2012, with the exception of reports that Plaintiff was experiencing sleeping disturbances.  AR 443, 445, 446. In January 2013, NP Devou that Plaintiff was "currently not depressed and is sleeping well," although Plaintiff also reported some difficulty in falling and staying asleep. AR 380.  Similarly, on April 8, 2013, NP Devou reported that Plaintiff was stable but with self-reported difficulties falling and staying asleep.  AR 378.

In the midst of Plaintiff's treatment with NP Devou, Plaintiff was examined by state consultative psychologist, Dr. Richard Fink.  AR 347. Plaintiff reported to Dr. Fink that he felt depressed and manic, although Dr. Fink stated that Plaintiff's use of "mania" was descriptive of feeling restless. AR 348. Plaintiff further reported sleeping difficulties, anxiety, and a history of panic attacks, although the panic attacks had become controlled with the use of medication.  AR 348. Plaintiff stated, however, that he had run out of money and could not afford to refill his medications. AR 348. Dr. Fink described Plaintiff as slightly disheveled, having a flat affect, but

with a coherent train of thought and flow of speech.  AR 348. Dr. Fink stated that Plaintiff was depressed but not suicidal and noted that "[t]here were no indications of disorders of thought or perceptions such as delusions or hallucinations." AR 348.  Dr. Fink further reported that Plaintiff had short-term memory problems and that this "story memory and processing speed, in particular, were slow." AR 348. Dr. Fink stated that his impression of Plaintiff was that he was suffering from a "mood disorder and an emerging anxiety disorder with panic attacks." AR 348. Dr. Fink diagnosed Plaintiff with Bipolar disorder (manic type) and panic attacks.  AR 348.

Dr. Fink opined that Plaintiff's mental impairments limited him in a number ways. Dr. Fink opined that Plaintiff's ability to understand and remember detailed and complex instructions, as well some short simple instructions, is moderately impaired due to short-term memory problems and an inability to understand the instructions. AR 349.  Dr. Fink further opined that Plaintiff "can complete a task if he understands it but cannot persist at it for very long." AR 349.  Dr. Fink stated that due to Plaintiff's depressed state and low energy levels, Plaintiff's ability to interact socially was impaired and Plaintiff "would have trouble with the public, coworkers, and supervisors." AR 349. Finally, Dr. Fink opined that Plaintiff's "abilities to adapt to changes in the work place…and react appropriately are no more than mildly to moderately impaired." AR 349.

Shortly thereafter, on August 2, 2012, state non-examining consultative psychologist, Dr. Sheldon Levy, conducted an MRFCA.  Dr. Levy found Plaintiff's ability to understand and remember detailed instructions moderately limited.  Dr. Levy further found that Plaintiff's abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, or perform at a consistent pace without an unreasonable

number and length of rest periods were moderately limited.  AR 72-73. As to social limitations, Dr. Levy found that Plaintiff was moderately limited in his ability to accept instructions, respond appropriately to criticism from supervisors, and get along with peers without distracting them or exhibiting behavioral extremes.  AR 74.  Finally, Dr. Levy found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting.  AR 74.  Dr. Levy concluded that based on Plaintiff's "overall mental status and ADLs…he is capable of simple repetitive tasks in the work environment."  AR 74.

     On June 1, 2013 non-examining state consultative psychologist Ralph Robinowitz issued an MRFCA largely affirming the findings of Dr. Levy. AR 78-95. Dr. Robinowitz found Plaintiff to be moderately impaired in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  AR 91. Dr. Robinowitz further found Plaintiff moderately limited in his ability to sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods. AR 91. As to social interaction, Dr. Robinowitz rated Plaintiff as moderately limited in his ability to interact appropriately with the general public.  AR 91. Finally, Dr. Robinowitz found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and his ability to travel in unfamiliar places or use public transportation.  AR 92. Given these moderate limitations, Dr. Robinowitz concluded that Plaintiff was unable to do complex work.  AR 92.

In May 2013, clinical psychologist, Dr. Bonnie Chavez, produced a report pursuant to Plaintiff's application for Department of Veterans Affairs (VA) service-related disability benefits. AR 504-516. Dr. Chavez noted in her examination of Plaintiff that he displayed depressive and anxious behavior, as well as panic symptoms. AR 513. Additionally, Dr. Chavez noted that Plaintiff showed indications of "paranoia and possible delusion." AR 513. Dr. Chavez noted Ms. Woodward's assessment that Plaintiff suffered from schizoaffective disorder with symptoms of major depression, mania, paranoia, and auditory hallucinations. AR 505-06. Dr. Chavez stated that while Plaintiff had not obtained the treatment history necessary to confirm such a diagnosis, Plaintiff's "life history, current mental status, and self-report are congruent with this diagnosis." AR 505-06. Dr. Chavez assessed Plaintiff a GAF score of 35. AR 507. On December 17, 2013, the VA determined that Plaintiff suffered from schizoaffective disorder and that there was a connection between the condition and his military service. AR 517. The VA accordingly awarded Plaintiff disability benefits. AR 521.

## II.     APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.
(2) Claimant must establish that she has "a severe medically determinable physical or

      mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.
(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.
(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the Claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.
(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, Claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. <u>Standard of Review</u>

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by

substantial evidence." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." Id. at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. Id. at 1011

### III.    ANALYSIS

Plaintiff argues that the ALJ's Residual Functioning Capacity (RFC) assessment is contrary to law and unsupported by substantial evidence because it failed to account for Plaintiff's psychological limitations. ECF No. 14 at 21. The ALJ found that Plaintiff had the RFC to

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: Can perform simple, routine tasks; occasional interaction with the general public and supervisors; no close collaboration with coworkers that is working with things than with people; and no frequent changes in the work setting.

AR 16. Specifically, Plaintiff contends that the RFC failed to account for Plaintiff's moderate limitations in his ability to concentrate and persist at tasks or his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. ECF No. 14 at 21. These limitations were uncontroverted in the record but Plaintiff emphasizes the findings of non-examining consultative psychologists Drs. Levy and Robinowitz because the

ALJ afforded "great weight" to their findings. ECF No. 14 at 21.

Defendant responds that Plaintiff's argument is based on a misunderstanding of the MRFCA form the consultants used to document Plaintiff's limitations. ECF No. 18 at 14. Defendant relies on the SSA's Program Operations Manual System (POMS) § DI 24510.060. This provision contains the SSA's operating policy governing the use of special Form SSA-4734-F4-SUP, which is used to document mental residual functional capacity decisions. The provision notes that there are three sections of special Form SSA-4734-F4-SUP, two of which are relevant to the instant issue. Section I is entitled "Summary Conclusions" and "is designed to record the [medical consultant's] analysis of the evidence and his/her conclusions about[] the presence and degree of specific functional limitations, and the adequacy of documentation." In this portion of the form, the consultant uses a series of "decision checkblocks" to rate the individual's potential limitations in four main categories: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Important to Defendant's argument is the statement in POMS § DI 24510.060 that "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." (emphasis in original). Instead, Section III, entitled the Functional Capacity Assessment, "is for recording the mental RFC determination." In Section III, the consultant is directed to explain "the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Further, "the discussion of all mental capacities and limitations in the section must be in narrative format." (emphasis omitted). As stated in POMS DI 25020.010(B)(1), "[i]t is the narrative written by the psychiatrist or psychologist in section III…that adjudicators are to use as the assessment of RFC."

In the present case, Defendant contends that findings indicating moderate limitations in Plaintiff's ability to concentrate and persist at tasks and complete a normal workday or workweek without interruptions from psychologically based symptoms were not required to be specifically addressed in the RFC because the findings were encapsulated by the consultants Section III findings.  ECF. No. 18 at 14-15.  Thus, Defendant argues that despite the absence of these findings in the ALJ's RFC, the RFC was sufficient because it encompassed the functional limitations discussed by the consultants in Section III.  ECF No. 18 at 14-15.

As an initial matter, the Court notes that the consultants did not appear to use special Form SSA-4734-F4-SUP.  For instance, the MRFCA forms used by Drs. Levy and Robinowitz do not separate the findings into sections or include "decision checkblocks."  That said, the differences between special Form SSA-4734-F4-SUP and the present MRFCA forms appear largely stylistic.  The MRFCA forms contained the same rating system and four general categories of limitations as special Form SSA-4734-F4-SUP. The MRFCA forms also directed Drs. Levy and Robinowitz to discuss Plaintiff's mental capacities in narrative form. Thus, the MRFCA forms are sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS § DI 24510.060, the specific psychological limitations at issue should have been included in the RFC.

Generally, an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P.  "In determining RFC, an ALJ must consider the limiting effects of all [the claimant's] impairments, even those that are not severe."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks and citation omitted).  "The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all, and that

11

moderate impairments must be addressed by the ALJ in connection with the RFC." *Baysinger v. Astrue*, No. 11-333, 2012 WL 1044746, * 5 (D. Colo. March 28, 2012) (unpublished) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).[1]

Furthermore, in regard to POMS § DI 24510.060, the Tenth Circuit recently recognized that although Section III should form the basis of the ALJ's RFC, that "does not mean that an ALJ can turn a blind eye to moderate Section I limitations." *Carver v. Colvin*, 600 Fed. App'x. 616, 619 (10th Cir. 2015) (unpublished). The Tenth Circuit noted that a separate POMS provision regarding moderate limitations requires that "[t]he degree and extent of the capacity or limitation *must be described* in narrative format in Section III." *Id.* (citing POMS § DI 24510.063 B.2). The Tenth Circuit therefore held that "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.*; *see also Baysinger*, 2012 WL 1044746, * 6 (rejecting the argument that an ALJ was not required to consider Section I impairments where the Section III findings did not adequately take into account the impairments).

In the present case, the ALJ afforded "great weight" to the findings of Drs. Levy and Robinowitz. AR 23. Both medical consultants noted that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods of time or complete a normal workday or workweek without interruptions from psychologically based symptoms and perform

---

[1] The Court relies upon *Baysinger* and other unpublished opinions in this decision. The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that the unpublished opinions it has cited have persuasive value with respect to a material issue, and will assist the Court in its disposition of this case.

at a consistent pace without an unreasonable number and length of rest periods. AR 73, 91. The narrative portion of Dr. Robinowitz's MFRCA, however, is relatively scant. Dr. Robinowitz explained that Plaintiff "can understand, remember and retain simple unskilled and detailed information" and that he is unable to do complex work. AR 92.  Dr. Levy, on the other hand, stated that Plaintiff had a "short attention span and didn't finish what he starts [sic]" which suggests that "he would have moderate limitations in his ability to carry out detailed instructions and maintain attention and concentration for extended periods." AR 73.  Dr. Levy reiterated that given Plaintiff's limitations, "he would have moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." While Dr. Levy did not expound on the extent of this limitation, Dr. Levy found that Plaintiff's "overall mental status and ADLs suggest that he is capable of simple repetitive tasks in the work environment." AR 74.  The ALJ condensed these findings in the RFC to the restriction that Plaintiff can perform "simple, routine tasks." AR 16.  Thus, the issue is whether this restriction sufficiently encompasses the moderate limitations at issue.

The Tenth Circuit has held that moderate limitations in regard to concentration and pace may be accounted for in an RFC by the restriction that a claimant can perform simple tasks or unskilled work. *See Lee v. Colvin*, No. 15-6027, 2015 WL 7003410, *3 (10th Cir. 2015). But this is not always the case. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (stating that a restriction to "simple work" is a vague catch-all term and insufficient to adequately account for mental limitations). Although the Court in *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015), ultimately affirmed that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently accounted for by a restriction to unskilled work, the Court reiterated that "[t]here may be cases in which an ALJ's limitation to 'unskilled

13

work' does not adequately address a claimant's mental limitations." Important to the Court's decision was that the moderate limitations at issue—the ability to maintain concentration for extended periods—is listed as "not critical" to the performance of unskilled work. *Id* at 1204 (citing POMS § DI 25020.010).

Here, although Plaintiff's ability to maintain concentration is one of the moderate limitations at issue, it is also uncontroverted that Plaintiff is moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  As stated in POMS § DI 25020.010, the mental abilities needed to understand, carry out and remember simple instructions and the "mental abilities critical for performing unskilled work" include the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." Unlike limitations in a claimant's ability to maintain concentration, POMS § DI 25020.010 emphasizes in regard to this limitation that "[t]hese requirements are usually strict." Thus, contrary to the moderate limitations at issue in *Vigil*, the restriction in the RFC to simple, routine tasks did not sufficiently account for this moderate limitation.  *See Bowers v. Astrue*, 271 Fed. App'x 731, 733-34 (10th Cir. 2008) (unpublished) (noting that moderate limitations in the ability to respond appropriately to changes in a routine work setting could decrease ability to perform simple or unskilled work because it is a general requirement for unskilled work).

This conclusion is supported by the hypotheticals the ALJ posed to the vocational expert (VE) during the hearing. In the first hypothetical, the ALJ described an individual who "could perform simple, routine tasks; can occasionally have interaction with the general public and

supervisors; can't have close collaboration with coworkers, as working with things rather than with people; and no frequent changes in the work setting." AR 60. The VE provided a number of jobs that could be performed by such a claimant in response to the first hypothetical. AR 61. However, in the second hypothetical, the ALJ modified the first to include an individual who would be "off-task [twenty] percent of the workday and would miss two days of work." AR 62. The VE responded that such a claimant could not perform any jobs. AR 62. Given that the second hypothetical presents an individual with obvious difficulties completing a workday or workweek without interruptions from psychologically based symptoms or one unable to maintain a consistent pace without an unreasonable number and length of rest periods, it is telling that Plaintiff's uncontroverted moderate limitation in this respect was ultimately omitted from the RFC. *See Baysinger*, 2012 WL 1044746, * 5 (concluding that the ALJ's failure to include moderate limitations in assessing mental RFC "particularly egregious…because the VE testified that Plaintiff would be disabled if these moderate limitations were included in the RFC").

In sum, while the ALJ could properly account for the moderate limitation regarding Plaintiff's abilities to maintain attention and concentration for extended periods in the RFC by reference to "simple, routine tasks," this restriction was insufficient to account for Plaintiff's moderate limitation in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." Accordingly, the Court concludes that the ALJ's decision must be reversed.

IT IS THEREFORE ORDERED that Gregory Vamvakerides Motion to Reverse and Remand (ECF NO. 14) is GRANTED. The Social Security Commissioner's denial of Mr. Vamvakerides claim for disability benefits is reversed and the case is remanded for further

proceedings consistent with this opinion.

                                                                                                                            _____
                                                                                      UNITED STATES MAGISTRATE JUDGE